**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0948n.06

No. 11-6536

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED**<br><br>***Aug 27, 2012***<br>LEONARD GREEN, Clerk |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| SEAN BLAKE, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| _____ | ) | |

**Before: MOORE and COLE, Circuit Judges, and ROSE, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Sean Blake challenges his sentence as substantively unreasonable on the basis that the district court impermissibly considered several of his prior arrests and criminal charges that were later dismissed without conviction. Because we find no evidence in the record to support the assertion that Blake's prior arrests factored into his ultimate sentence, and because the within-Guidelines sentence was not substantively unreasonable, we **AFFIRM**.

**I. BACKGROUND & PROCEDURE**

On January 5, 2010, a federal grand jury indicted Blake on four counts of distributing cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(1). R. 3 (Indictment) (Page ID #4–7). All counts stemmed from a series of crack cocaine sales by Blake to an undercover detective with the

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

Memphis Police Department. Five exchanges occurred between September 8 and September 23, 2009, and resulted in a cumulative total sale of .54 grams of crack cocaine. *Id.* (Page ID #4–8); R. 62 (Sent. Hr'g Tr. at 30) (Page ID #206). On August 3, 2011, Blake pleaded guilty to Count One; as part of his plea agreement, the other counts were dismissed at the December 19, 2011 sentencing hearing. R. 58 (Dist. Ct. J. at 1) (Page ID #164); R. 62 (Sent. Hr'g Tr. at 59) (Page ID #235).

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR") that, among other things, calculated the advisory Guidelines range consistent with the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The PSR classified Blake as a "career offender" because the instant crime was a controlled substance offense, and because Blake had two felony convictions for crimes of violence—one for attempted aggravated robbery, another for attempted murder during an aggravated robbery—and one felony conviction for a unlawful possession of cocaine with intent to sell. (PSR ¶¶ 23, 34, 36, 38); *see* U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 4B1.1(b)(3) (2011).[1] As part of the plea agreement, the government recommended a full reduction for acceptance of responsibility, which resulted in a total offense level of twenty-nine and a corresponding Guidelines range of 151–188 months. (PSR at ¶¶ 24–25; 107).

During sentencing, the district court reviewed the PSR's accounting of Blake's criminal history. Mentioned in that discussion were Blake's juvenile adjudications, his adult convictions, and his history of mental-health issues and substance abuse. Included also was a discussion of "Other Criminal Conduct," which includes several juvenile and adult charges, each of which resulted in a dismissal or a *nolle prosequi*. *Id.* at ¶¶ 43–59. Blake sought a downward variance to a sentence of

---

[1] The PSR was prepared using the 2010 Guidelines, reliance on which the parties do not contest. There are no changes between the 2010 and 2011 Guidelines relevant to this appeal.

76 months in part because of his addiction and mental-health struggles, and in part because the status of "career offender" was ill-fitting given that his violent-crime convictions occurred in the mid-1990s.[2] R. 62 (Sent. Hr'g Tr. at 24–26) (Page ID #200–02). The government defended a low sentence, but one nevertheless within the Guidelines' recommended range, because of the recurrence and severity of Blake's offenses. *Id.* at 27–28 (Page ID #203–04). After investigating both sides' claims, the district court sentenced Blake to 151 months of imprisonment—equal to the minimum within-Guidelines sentence. R. 58 (Dist. Ct. J. at 2) (Page ID #165); R. 62 (Sent. Hr'g Tr. at 54–57) (Page ID #230–33).

On appeal Blake now argues that the district court improperly considered his past run-ins with the law in reaching a sentence. Blake claims that mere evidence of arrest is consistent with actual innocence when initial charges were dismissed or not prosecuted, thus making consideration of these events during sentencing improper. In essence, Blake claims that his prior charges should not be held against him because they were ultimately dismissed.

## II. ANALYSIS

The parties agree that at issue is whether Blake's sentence is substantively unreasonable because the district court based its decision on impermissible factors.[3] *See United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007) ("A sentence may [be] substantively unreasonable where the

---

[2]Although it was a prominent dispute at sentencing, Blake does not currently challenge his status as a career offender before this tribunal.

[3]We distinguish substantive and procedural unreasonableness. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (identifying as procedural errors "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence"). The parties agree that no procedural unreasonableness took place.

3

district court 'select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors or giv[es] an unreasonable amount of weight to any pertinent factor'" (quoting *United States v. Ferguson*, 456 F.3d 660, 664 (6th Cir. 2006)) (alterations in original). We review the district court's decision making for abuse of discretion.[4] *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008). Moreover, we afford sentences that fall within the Guidelines' recommendations a rebuttable presumption of reasonableness. *United States v. Liou*, 491 F.3d 334, 337 (6th Cir. 2007).

## A. Relevance of Dismissed Charges to Sentencing

The Guidelines themselves provide guidance only indirectly on whether and to what extent purported criminal conduct not resulting in a conviction constitutes an impermissible factor. As a preliminary matter, we observe that a sentencing court "may consider relevant information . . . provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The Guidelines contemplate adult criminal conduct specifically in U.S.S.G. § 4A1.3(a), which governs upward departures. On the one hand, a district court may consider "[p]rior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G.

---

[4]Arguably the more appropriate standard is plain error, because Blake did not, when given the opportunity, object to the purported consideration of prior charges during sentencing. *See United States v. Bailey*, 488 F.3d 363, 367 (6th Cir.), *cert. denied*, 552 U.S. 999 (2007) ("[W]hen the district court asks at sentencing whether there are any objections to the sentence and the appellant raises none, we review the sentence only for plain error."). *But see United States v. Vonner*, 516 F.3d 382, 389 (6th Cir.) (en banc), *cert. denied*, 555 U.S. 816 (2008) (stating that the reasonableness of a sentence's length need not be objected to before the district court). We need not decide the issue here, in part because the standard applied will not alter the outcome of this appeal, and in part because neither party raises plain error as the standard to be applied. *See United States v. Williams*, 641 F.3d 758, 763 (6th Cir.), *cert. denied*, --- U.S. ---, 132 S. Ct. 348 (2011) ("[E]ven though plain-error review might have been available for this claim, we will not apply the plain-error standard unless requested to do so by one of the parties.").

§ 4A1.3(a)(2)(E). On the other hand, "[a] prior arrest record *itself* shall *not* be considered for purposes of an upward departure." U.S.S.G. § 4A1.3(a)(3) (emphasis added).

Here we are confronted not with an upward departure from the Guidelines, but rather with the denial of a downward variance. Nevertheless, the implication of U.S.S.G. § 4A1.3 is that past criminal conduct may be considered in some instances, provided there is "sufficient indicia of reliability" that the conduct occurred—and an arrest report *alone* is not sufficient. Relying on the Guidelines text alone, however, does not resolve the question of when sufficiently reliable indicia exist. The Supreme Court previously permitted the consideration of criminal conduct at sentencing "so long as that conduct has been proved by a preponderance of the evidence." *United States v. Watts*, 519 U.S. 148, 157 (1997); *see Nichols v. United States*, 511 U.S. 738, 747 (1994) ("Sentencing courts have . . . considered a defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct.").[5]

We have not addressed squarely the extent to which prior criminal conduct may be considered during sentencing in a non-departure case. Nevertheless, we can glean insight from our opinions that considered prior arrests to justify upward departures from the Guidelines. In *United States v. Matheny*, we joined the Fourth, Fifth, Seventh, and Eleventh Circuits in holding that "district courts may consider prior arrest records [in considering an upward departure] only when

---

[5]It remains to be seen whether this approach will survive the further constitutional scrutiny since afforded sentencing by *Booker* and its brethren. *But see Jones*, 489 F.3d at 250 ("We have previously determined that 'judicial fact-finding in sentencing proceedings using a preponderance of the evidence standard post-*Booker* does not violate [due process rights].'" (quoting *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006)); *see also United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008).

the PSR provides specific facts surrounding the arrest." *United States v. Matheny*, 450 F.3d 633, 642 (6th Cir. 2006); *cf. United States v. Berry*, 553 F.3d 273, 284 (3rd Cir. 2009) (adopting a similar approach after surveying overlapping opinions from the First, Seventh, Eighth, and Tenth Circuits). And recently in *United States v. Jennings*, we found no error where a district court considered, among other things, the defendant's "six prior arrests" in considering and adopting a sentence that exceeded the Guidelines' recommendations threefold. *United States v. Jennings*, 407 F. App'x 20, 22 (6th Cir. 2011) (unpublished opinion); *see also United States v. Williams*, 214 F. App'x 552, 555 (6th Cir. 2007) (unpublished opinion) ("[I]t is . . . well-settled that relevant unconvicted conduct, even acquitted conduct, may be considered in determining a defendant's sentence."). Whatever may be considered when adopting a within-Guidelines sentence in the face of a variance request—which, as we noted, under our precedent carries with it a presumption of reasonableness—presumably it at least includes the same evidence that may be considered to support an upward departure.

Blake did not object at the sentencing hearing, nor does he now on appeal, to the relevant substantive claims contained in the PSR. *Cf.* FED. R. CRIM. P. 32(i)(3)(A) ("At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact."). Rather, his argument rests on the observation that a decision to dismiss is equally consistent with innocence as with something worse. This claim is true as far as it goes. But it does not go far enough, in light of our jurisprudence, to forbid a trial court from considering criminal circumstances in sentencing. *See* R. 62 (Sent. Hr'g Tr. at 45) (Page ID #221) (noting the PSR's long factual discussion of charges that were not later prosecuted).

**B. Actual Reliance on Past Charges**

We need not go further to determine the precise contours of the reliability calculation necessary for considering past criminal conduct during within-Guidelines sentencing. This is because Blake's appeal depends not just on the suggestion that relying on non-convictions is substantively unreasonable as a matter of law, but *also* on the claim that the district court in this case in fact relied on such information. We find insufficient evidence to support such actual reliance.

Blake directs us to the discussion of his prior criminal history in the sentencing hearing. However, the record indicates that the district court did little more than recite each instance listed in the PSR. R. 62 (Sent. Hr'g Tr. at 44–46) (Page ID #220–22). Paraphrasing aloud the PSR does not amount to proof that the district court relied on these arrests in forming its opinion. Blake suggests that the district court was in fact influenced by his arrest record, because the district court considered his past conduct before deciding his sentence. As evidence of this, Blake directs us to the trial court's rehearsing of the 18 U.S.C. § 3553 factors, and in particular the court's explanation of why the Guidelines require that past conduct be considered. R. 62 (Sent. Hr'g Tr. at 48) (Page ID #224) ("[W]e're required to look at history and characteristics because one of the principles under the [G]uidelines is that what a person has done repeatedly in the past is a pretty good predictor of what they will do in the future."). Explaining in general terms obligations imposed by the Guidelines is not grounds for finding an impermissible consideration.[6] Likewise, there is no reason to suspect that the district court's ultimate assessment depended upon Blake's prior arrests. The district court

---

[6]Indeed, we note the possibility that to hold otherwise based on the record presented would doubly bind future trial courts: those that thoroughly satisfy their § 3553(a)(1) duty would be deemed substantively unreasonable, while those that respond by avoiding such discussion of § 3553(a)(1) would be procedurally unreasonable. *See Gall*, 552 U.S. at 51 (stating that "failing to consider the § 3553(a) factors" is procedurally unreasonable).

engaged in a lengthy discussion of the former convictions, including crimes of violence that Blake argued should be discounted, and including recent drug-related felonies and misdemeanors. The court paid special attention to Blake's mental health, to the prospect of rehabilitation through different means, and to considerations of communal fairness across sentencing decisions. R. 62 (Sent. Hr'g Tr. at 50–52, 54–55) (Page ID #226–28, 230–31). Ultimately, the court ordered a period of 151 months of incarceration, consistent with the Guidelines given Blake's conviction record, coupled with drug treatment and vocational training. *Id.* at 57 (Page ID #233). We cannot say that a sentence based on such considerations is substantively unreasonable.

Blake points us to two statements by the district court as evidence that the court did more than merely note the PSR's discussion and state the § 3553 factors generally. First, the district court stated that Blake had "a lot of familiarity with the criminal justice system." *Id.* at 46 (Page ID #222). Of course, this statement has the inconvenient virtue of being true. Blake has experienced double-digit juvenile adjudications and adult convictions, including the three felony charges that designate him as a career offender. Second, Blake identifies as evidence of improper consideration the district court's remark that "it appear[s] that courts were attempting to take into consideration either your youth or the difficult circumstances and tried to give you a chance." *See id.* at 44 (Page ID #220). This comment alone, we think, is insufficient to support a finding of substantive unreasonableness. For one, context matters: the remark came immediately before discussing Blake's assignment to a juvenile bypass program in response to a car theft, in which the state determined he in fact committed the underlying criminal conduct. *See id.* For another, as noted above, Blake's sentence was consistent with his status as a career offender, and the district court centered its attention on

8

Blake's health, the possibility of rehabilitation, and norms of fairness and communal safety. We do not interpret this single statement to undermine the reasonableness of that analysis.

### III. CONCLUSION

Because we conclude that the district court did not improperly rely on Blake's prior arrest record in determining his sentence, we **AFFIRM** the judgment below.